# Exhibit 45, Part 6 of 15

Mere uddybende bemærker Skattestyrelsen følgende:

Indholdsfortegnelse

1. INDLEDNING ........................................................................................................... 4
2. SAGERNE I HOVEDTRÆK ....................................................................................... 5
    2.1    Sagskompleks med svindel for 12,7 mia. kr. .................................................. 5
    2.2    De seks førersager ........................................................................................ 6
    2.3    Pensionsplanernes påståede set-up .............................................................. 9
    2.4    Det påståede set-up ville aldrig kunne anvendes i virkeligheden ................. 11
3. INGEN PENGE ELLER KREDITVÆRDIGHED, MEN AKTIER FOR MILLIARDER ...... 12
    3.1    Pensionsplanernes havde ikke nogen penge og har ikke modtaget nettoudbytter .... 13
    3.2    Pensionsplanerne har ikke haft adgang til ekstern finansiering .................... 14
            3.2.1    GMSLA'erne er ikke troværdige .................................................. 15
            3.2.2    Den påståede finansiering var ikke på plads på aftaletidspunktet .... 16
            3.2.3    Aktielånsaftalerne er "indgået baglæns" ..................................... 17
            3.2.4    GMSLA'erne er ikke blevet overholdt .......................................... 18
            3.2.5    Stock Lending Rate fastsættes arbitrært, og den aftalte Rate anvendes ikke (nyt) .................................................................................................... 20
4. UREALISTISK SET-UP UDEN FORRETNINGSMÆSSIGT RATIONALE ................. 21
    4.1    Der er handlet urealistisk store aktieposter .................................................. 22
    4.2    Pensionsplanernes fortjeneste svarer præcis til udbytterefusionen ............. 24
    4.3    Der er intet forretningsmæssigt rationale bag de påståede transaktioner (nyt) .. 26
    4.4    Nulresultatet ved investeringerne er dybt usandsynligt ................................ 27
    4.5    Nulresultatet nås alene ved hjælp af "regnefejl" (nyt) .................................. 28
5. FEJL OG MANGLER VISER, AT DER IKKE ER HANDLET AKTIER ....................... 30
    5.1    Der er ingen dokumentation for, at pensionsplanernes custodians ("Solo-gruppen") har besiddet aktier ....................................................................... 30
    5.2    Pensionsplanerne henviser til intern bogføring hos deres custodians ("Custody Statements" – bilag 10) ................................................................................ 32
    5.3    Efterfølgende udarbejdede oversigter over bogføringer beviser ingenting ..... 33
    5.4    Broker Confirmations (bilag 11) dokumenterer ikke ejerskab ....................... 34
            5.4.1    Brokere gennemfører ikke handlen (nyt) ...................................... 34
            5.4.2    Der er flere uoverensstemmelser mellem de påståede aktiebesiddelser og handelsnotaerne (nyt) ................................................................ 35
            5.4.3    Konkrete eksempler på fejl i handelsnotaer (nyt) .......................... 36
    5.5    Der er ikke dokumentation for gennemførte handler ..................................... 41
    5.6    Vilkår for settlement er ikke markedskonforme ............................................. 42
    5.7    Handlerne (og fortjenesten) ......................................................................... 44
    5.8    Det er udokumenteret, at nettoudbytte og refusion ædes op af omkostninger .. 45
    5.9    Custody Agreement er ikke blevet overholdt ................................................ 45
6. SYSTEMATIKKEN VISER, AT DET HAR VÆRET EN SKRIVEBORDSØVELSE ...... 47
    6.1    Alle pensionsplaner køber samme dag og til samme pris (nyt) ..................... 48
    6.2    Størrelsen på aktiebesiddelser er systematiseret ........................................ 49
    6.3    Pensionsplaner har næsten ens aktieporteføljer (nyt) .................................. 51
    6.4    Alle pensionsplaner handler med de samme parter (nyt) .............................. 52
    6.5    Salgstidspunkt er systematiseret (nyt) ......................................................... 53
    6.6    Sanjay Shah kontrollerede pensionsplanernes custodians (Solo-gruppen) ... 55
    6.7    Custodian: Sanjay Shahs "univers" ............................................................. 56
    6.8    Credit Advices er nummereret fortløbende på tværs af Solo-gruppen ........... 57
    6.9    Credit Advices fra Solo-gruppen blev anvendt til forsøg på svindel i 2017 .... 60
    6.10   Pensionsplanerne har fastholdt, at handlerne ikke blev styret centralt .......... 61

|  | 6.11 | To pensionsplaner har glemt at ansøge om refusion (nyt) | 62 |
| 7. | FORMALIA | | 64 |
|  | 7.1 | Bevisbyrde | 64 |
|  | 7.2 | Annullation eller tilbagekaldelse – ugyldige afgørelser kan tilbagekaldes | 66 |
| 8. | PENSIONSPLANERNES BETRAGTNINGER | | 68 |
|  | 8.1 | Pensionsplanernes pengemaskine | 68 |
|  | 8.2 | Én aktie kan have flere ejere | 68 |
|  | 8.3 | Short-selling medfører, at der er flere aktier på markedet end udstedt af selskabet | 68 |
|  | 8.4 | 1 udbytteskat kan føre til 2 refusioner | 69 |
|  | 8.5 | Sagen handler om jura | 69 |
|  | 8.6 | Det er umuligt at svindle med aktiehandler | 70 |
|  | 8.7 | Skiftende forklaringer 1: Pensionsplanernes "afgørende" beviser ændrer karakter | 70 |
|  | 8.8 | Skiftende forklaringer 2: Uoverensstemmelser i forklaringer om sikkerhedsstillelse og udbetaling af refusion | 72 |
|  | 8.9 | Skiftende forklaringer 3: Pensionsplanernes konti | 72 |
|  | 8.10 | Skiftende forklaringer 4: Manglende bevismateriale | 73 |
|  | 8.11 | Manglende forbindelse til VP Securities og settlement ved netting | 73 |
|  | 8.12 | Aktielåntager vil stille sikkerhed på markedsværdien | 74 |
|  | 8.13 | Spekulation om, hvorvidt Pinsent Masons har rådgivet Solo Capital | 75 |

## 1.  INDLEDNING

Udover pensionsplanerne i de 6 førersager repræsenterer TVC Advokatfirma mere end 100 ameri-kanske pensionsplaner, som alle har deltaget i fuldstændig samme set-up og med samme kreds af aktører.

På baggrund af påstået ejerskab til danske aktier har pensionsplanerne hver især fået udbetalt mange millioner kr. i refusion af indeholdt udbytteskat – i de seks førersager fra 1,2 mio. kr. til 70,9 mio. kr.

Pensionsplanerne kan ikke dokumentere, at de har ejet de påståede aktier, og at de har modtaget (netto)udbytte herfra, (…). Og pensionsplanernes helt identiske historie er *urealistisk* på et konkret såvel som et generelt plan.

Der er tale om nystiftede pensionsplaner, som ikke havde nogen penge eller nogen kreditværdig-hed i øvrigt. Alligevel påstår de at have købt danske aktier for mange hundrede millioner kr. (og i mange tilfælde endda milliarder kr.). Pensionsplanerne påstår, at de har finansieret de påståede aktiekøb ved aftaler om aktieudlån og forwards, men det kan de ikke dokumentere. Bl.a. er der ikke dokumentation for pengestrømme, og det er derfor ikke muligt at se, hvor pengene til aktiekøbene skulle være kommet fra, eller hvor de ryger hen, (…).

Enhver, der køber aktier, vil naturligvis sikre sig selv dokumentation for at have ejet aktierne, men det har pensionsplanerne åbenbart ikke gjort.

Det er helt urealistisk, at *én* nystiftet pensionsplan uden penge og kreditværdighed har kunnet skaffe ekstern finansiering til at foretage så massive investeringer. Og det er endnu mere urealistisk, at det samme skulle kunne lade sig gøre for mere end *hundrede* nystiftede pensionsplaner uden penge og kreditværdighed.

Dertil kommer, at pensionsplanerne ikke kan dokumentere, hvor deres påståede massive gevinster er blevet af.

Den samlede fortjeneste ved hver aktiehandel (inkl. transaktioner ved aktieudlån og forwards) svarer *præcist* til den udbetalte refusion, og hele gevinsten tilfalder pensionsplanerne. Det illustrerer ganske klart, at set-up'et ifølge pensionsplanerne har det ene formål at opnå en uberettiget refusion, som kun pensionsplanerne selv får udbytte af. De andre aktører i set-up'et (aktiesælgere, aktiekøbere, aktielåntagere og forward-medkontrahenter) bidrager – ifølge pensionsplanernes historie – med aktier, penge og risikoafdækning, men får ikke del i gevinsten. Det er altså et set-up fuldstændig uden forretningsmæssigt rationale for de øvrige aktører. Forretningsmæssige aftaler indgås for, at begge parter kan opnå fortjeneste ved aftalen. Her har andre aktører i meget betydelige aktiehandler altså deltaget uden at få andel i gevinsten i tusindvis af tilfælde.

Pensionsplanerne har fremlagt flere tusinde siders bilagsmateriale. Men ingen af dem har fremlagt sine egne kontoudtog. I det hele taget er sagskomplekset kendetegnet ved en total mangel på dokumentation for pengebetalinger og overførsler.

Bilagsmaterialet er både mangelfuldt og fejlbehæftet, hvilket – om end naturligt, når der er konstrueret et så omfangsrigt og fiktivt set up – i sig selv er mistillidsskabende, når der er tale om materiale, som angiveligt skulle dokumentere aktiehandler for mange milliarder kr.

Én ting kan dog også udledes af det samlede bilagsmateriale; der er tale om helt systematisk og centralt koordineret svindel med refusioner af indeholdt udbytteskat. Systematikken i forbindelse med de påståede aktiehandler viser ganske tydeligt, at der er tale om fiktive handler kamufleret ved rene skrivebordsmanøvrer.

Pensionsplanernes historie hænger ganske enkelt ikke sammen og har ikke hold i den virkelige verden. Pensionsplanernes egne forklaringer er da heller ikke konsekvente, men skifter alt efter, hvad der passer bedst ind i deres historie.

## 2.    SAGERNE I HOVEDTRÆK

De administrative sager angår spørgsmålet om, hvorvidt pensionsplanerne var berettigede til refusion af indeholdt udbytteskat. Sagerne angår <u>ikke</u> tilbagebetaling af udbetalte beløb. Spørgsmålene om tilbagebetaling af beløbene verserer ved de amerikanske retssager, som Skattestyrelsen har anlagt med bl.a. alle pensionsplaner repræsenteret af TVC Advokatfirma, herunder de seks førersager. Tilbagebetalingsspørgsmålet vil således blive afgjort ved de civile søgsmål.

### 2.1    Sagskompleks med svindel for 12,7 mia. kr.

Sagskomplekset omhandler systematisk svindel med refusion af indeholdt udbytteskat fra 2012 til 2015, hvilket har resulteret i, at den danske stat er blevet snydt for samlet ca. 12,7 milliarder kr.

Der er tale om bl.a. 277 amerikanske pensionsplaner, som har anmodet om – og fået udbetalt – refusion af indeholdt udbytteskat. Pensionsplanerne ejede imidlertid ikke de pågældende aktier og har derfor ikke modtaget (netto-)udbytte. De var derfor heller ikke berettiget til de omhandlede refusioner.

Pensionsplanerne mv. har i flere tilfælde tilsammen tilbagesøgt udbytteskat i en størrelsesorden, der ganske enkelt er umulig.

Hvis alle refusionsanmodningerne lægges til grund, vil de f.eks. omfatte mere end halvdelen af aktierne (A og B) i A.P. Møller – Mærsk A/S. Det kan *umuligt* være rigtigt, idet kendte, danske fonde i sig selv ejer over halvdelen af de samlede aktier. Dertil kommer aktier ejet af andre professionelle investorer.