# Exhibit 138

# ARTHUR COX

EARLSFORT CENTRE, EARLSFORT TERRACE, DUBLIN 2
TEL +353 1 618 0000  FAX +353 1 618 0618  DX 27 DUBLIN
mail@arthurcox.com   www.arthurcox.com

| BELFAST | LONDON | NEW YORK |
|---|---|---|
| CAPITAL HOUSE, 3 UPPER QUEEN STREET | 12 GOUGH SQUARE | 300 PARK AVENUE, 17TH FLOOR |
| BELFAST BT1 6PU | LONDON EC4A 3DW | NEW YORK, NY 10022 |
| TELEPHONE +44 28 9023 0007 | TELEPHONE +44 20 7832 0200 | TELEPHONE +1 212 705 4288 |
| FAX +44 28 9023 3464 | FAX +44 20 7832 0201 | FAX +1 212 572 6499 |

OUR REF                                            YOUR REF
FC/CI62715.1
Direct Dial : 618 0533

8 April 2010

**STRICTLY PRIVATE AND CONFIDENTIAL**

Richard Markowitz
Managing Director
Argre Management LLC
40 West 57th Street
20th Floor
New York, NY 10019
USA

**Re:    Legal Advice Relating to Proposed Investment in an Irish Fund**

Dear Richard,

We confirm that we are pleased to act for you in this matter, on the terms of this letter and the enclosed terms of business.

**Legal work to be undertaken**

The work to be undertaken by us will consist primarily of the provision of tax and fund advice relating to your proposed investment in an Irish investment fund via a Maltese feeder fund.

**The legal team**

We believe that it is important to maintain a close relationship with you as part of the provision of our services. In these circumstances Fintan Clancy is designated as your client partner and is responsible for liaising with you in relation to all services which this firm provides to you. In addition, Kevin Murphy will provide funds advice.

At the outset of our engagement, we will discuss with you the partners and professional staff who will be dealing with your work and how work can be cost effectively and efficiently delegated to associates, solicitors, trainee solicitors or legal executives where appropriate.

**Charges**

Our fees (excluding expenses, disbursements and VAT (if any)) will be on a time basis calculated by reference to our standard hourly rates from time to time. Our current standard rates are set out below:

*document5*

Eugene McCague  Padraig Ó Ríordáin  James B. Walsh  Michael Meghen  William Johnston  Nicholas G. Moore  Brian Hayes  David O'Donohoe  Glenn Deegan  Carl O'Sullivan  Maria Foley  John Mead  Cormac McDonnell  Patrick McGovern  Graham Hennessy  Séamus Given  Colm Burke  Caroline Devlin  Colin Rooney  Grainne Cahill  David Foley  Joanne Hegarty  Declan Drislane  Sarah Cunniff  Kathleen Garrett  Pádraig Ó Ríordáin  Elizabeth Bothwell  William Day  Andrew Lenny  John Matson  Patrick O'Brien  Orla O'Connor  Brian O'Gorman  Mark Saunders  Mark Barr  John Matson  Deirdre Barry  Kevin Murphy  Connor Hurley  Eoin Casey  Richard Ryan  Kevin Langford  Eve McMahON  Peter Foster  Kenneth Egan  Brian Tynan  Caoimhe Healy  Alex McLean  Glenn Butt  Niav O'Higgins  Fintan Clancy  Tom Casey  Rachel Hussey  Shamila Hafiz  Pearse Ryan  Declan Shannon  Dr Thomas B Courtney  Orla Keane  Aaron Boyle  Rachel Hussey  Colin Kavanagh  Kevin Lynch  Garrett Monaghan  Geoff Moore  Fiona McKeever  Chris McLaughlin  Maeve McLoughlin  Jennifer O'Connell  Paul Robinson  Richard White  Ted Kenny  Deirdre Barrett  Cian Beecher  Aidan Finnerty  Eoghan Gallagher  Conor O'Dwyer  Jenny Fisher  Robert Cain  Bryan Dunne  Connor Manning  Gary McSharry  Keith Smith

ARTHUR COX

| Partner | €475-525 |
| Senior Associate | €360 - 425 |
| Junior Associate | €250 - 330 |
| Trainee | €150 - 200 |

**Limitation of Liability**

Any liability which we may incur, whether on the basis of negligence, breach of contract or on any other basis whatsoever, which results directly or indirectly from our engagement or our work undertaken in connection with the matter will be limited to an amount, in the aggregate, which is the greater of (i) an amount which is eight times the amount of the total fee we are paid in respect of the engagement and (ii) the amount specified pursuant to section 26A(3) of the Solicitors (Amendment) Act 1994.

**General**

If you have any questions relating to this letter or the attached terms of business, or if there is any further information generally that we can provide about our services, please let us know

If you are in agreement with the terms of this letter and the attached terms of business please sign and return the copy. If we do not receive this letter back from you we will assume that you are in agreement with its terms if you continue to instruct us after the receipt of this letter and attachments.

Thank you for your instructions.

Yours sincerely

FINTAN CLANCY
Partner
Arthur Cox

I, on behalf of Argre Management LLC have read, understand and accept the terms of business attached to this letter.

Signature:......................................
Name (in Print):.. *Richard Markowitz*
Date:.. ... *8. April 2010*

ARTHUR COX

# ARTHUR COX

TERMS OF BUSINESS

Our aim is to provide all our clients with consistently top quality legal advice as promptly and cost effectively as possible. This document explains the terms on which we do business.

1.   **The Team**

    (a)   We believe that close and continuing personal relationships play an important part in the provision of our services. One of our partners will, therefore, be designated as being your relationship partner, responsible for liaising with you about all matters being handled by us on your behalf. One or more additional contact partners may also be designated.

    (b)   We will discuss and agree with you, at the outset of a matter, which of our partners and senior professional staff will be handling your work. During the course of a matter, other partners and professional staff may be introduced to you and work on your matter, for example where we think that the demands of the matter require it, specialist assistance is needed or to provide cover for holidays. This will also be discussed with you.

2.   **Our Services**

    (a)   We will provide legal services in relation to any matter on which we are instructed on the terms contained in this document and contained in any letter of engagement provided by us. If there is a conflict between any letter of engagement and the terms in this document, the letter of engagement will prevail.

    (b)   At the outset of a matter, we will discuss and agree with you the nature and scope of the legal services to be provided by us. They may be varied, by agreement, during the course of a matter.

    (c)   If agreed in writing at the outset or during the course of a matter, our services will include legal advice on tax related issues.

3.   **Information**

To enable us to perform our services to a high standard, we will need you and any other professional advisers working with you on a matter, to supply us with the information which we consider necessary as promptly as possible.

4.   **Basis of our Charges**

    (a)   Our objective is to charge fees, which are fair, reasonable and competitive.

    Under section 68(1) of the Solicitors' (Amendment) Act 1994 ("the Act") we are obliged to provide you with a written statement of our actual charges or, where this is not practicable, an estimation of our charges, or where neither of the foregoing is possible or practicable, the basis on which our charges will be calculated.

    Accordingly, our legal services will be provided on one of the following bases, or as otherwise agreed with you:

ARTHUR COX

(i)   on a "time" basis; this is dependent on the amount of time spent on the matter (including that spent on research, considering, preparing and working on papers, correspondence and making and receiving telephone calls, travelling and attending meetings) at the appropriate hourly rates for the partners and other staff engaged, having regard to the urgency, complexity, novelty, importance or any other relevant aspects of the matter; or

(ii)  an agreed "fixed" fee basis; or

(iii) certain types of work are charged according to a scale of fees based on the value of the transaction or on a transaction fee basis; or

(iv)  in certain cases, our fees will be based upon an appraisal of the value of the professional advice and services rendered, giving appropriate consideration to (a) the time and work required and the experience of those performing the services, (b) the complexity of the issues presented and the skills required, (c) the contribution made, responsibility assumed, amount involved and results achieved, (d) any extraordinary efforts made to meet time constraints or other requirements imposed by the client or the circumstances, and (e) the fees customarily charged for similar legal services.

In the absence of any express agreement as to the basis of charge, paragraph (i) shall apply.

(b)   Depending on the work involved, we try to estimate in advance the likely fees for any such work. In such circumstances, we will give you the best guide that we can and will review the position on an ongoing basis.

Most cases or transactions involve contact with other lawyers and their clients. Even if a matter is, or at least initially appears to be, legally straightforward, the extent of the legal work required for it may not be wholly within your or our control. In the case of litigious or transaction matters, the nature and extent of the work may be largely dictated by court procedure or by the positions taken by other parties or by you.

In cases where you ask us to advise on a situation or on legal implications of different approaches to a particular problem, you would need to take a view about the format or scope of work that is actually required, at least initially, since this will be highly relevant for any fee estimate. An initial general overview of an issue would require less time and legal resources to carry out than a comprehensive review of all possible scenarios.

(c)   We may incur certain expenses on your behalf (such as search fees, court fees, copying charges and couriers' charges). We may also charge you for photocopying, telephone calls, hosting a data room, or other services provided by law firms at our standard rates from time to time.

(d)   We may sometimes ask you to put us in funds to pay the items mentioned in condition 4(c) (either in advance on account or periodically as they become due for payment), or generally in advance on account of our fees, disbursements and expenses. We may use funds paid in advance on account generally to pay our own fees, disbursements and expenses upon delivery of our bill to you.

(e)   Fees, expenses and disbursements are exclusive of VAT (where applicable), for which you will be liable.

ARTHUR COX

    (f)    Variations in our hourly rates may arise as a result of the promotion of an individual assigned to a matter or from a review of our rates.

5.    **Billing**

    (a)    We agree with our clients the frequency with which they would like to be billed. Generally, we issue interim bills in which case a final bill will be issued on completion of the matter. Each bill may be accompanied by any details requested of the work undertaken and, if requested, copies of invoices for significant external disbursements and expenses.

    (b)    All bills (whether interim or final) are payable within 30 days of the date of invoice. Requests for payment in accordance with condition 4(d) are payable by return.

    (c)    We may, at our discretion, charge interest on an overdue bill from the date on which the bill was issued to the date of payment at the rate of interest equal lending bank's overdraft rate from time to time plus 1%.

6.    **Client Monies**

All client monies transferred by you to us will be received into our client monies current account with our bankers from time to time. Upon receiving written instruction from you, client monies will then be placed in a designated deposit account with a financial institution licensed to accept deposits in Ireland. We will account to you for any interest earned (less tax if appropriate). You should inform us if there is any financial institution you would prefer to hold or not to hold your monies. We do not accept responsibility in relation to custodianship of funds by the financial institute within which they have been placed.

7.    **Payment of Costs in Contentious Matters**

    (a)    You will remain liable to us for payment of our fees, expenses and disbursements irrespective of any arrangement for their payment by a third party (including any insurance against legal costs) or any order for costs made by the court in your favour. In every case you will be the addressee of our bill.

    (b)    If an order for costs is made by the court against you (whether in interlocutory proceedings or otherwise), to pay the costs of any other party you will be responsible for their payment except to the extent to which we have been put in funds to pay them on your behalf.

8.    **Anti Money Laundering**

As a firm of solicitors we are required to comply with the legal obligations imposed by the Criminal Justice Act 1994 (as amended). Therefore we may be obliged to request identification documentation from you in relation to your identity or that of your organisation. If we are unable to satisfy our legal obligations in the requirement to identify our clients or where we suspect the commission of an offence of money laundering, we may cease to act for you.

9.    **Confidentiality**

    (a)    We will keep information about your business and affairs confidential and will not disclose it to any other person except (a) with your consent, (b) to your other professional advisers, (c) where disclosure is required or permitted by law, (d) to any body which represents or regulates us (such as the Incorporated Law Society), (e) to the extent that such information enters, or has entered, the public domain or (f) (in

ARTHUR COX

confidence only) to our professional indemnity insurers, brokers, auditors or professional advisers.

(b)   You agree that we will not (and nobody working for us will) be required to disclose to you, or use on your behalf or for your benefit, any documents or information in our possession and in respect of which we owe a duty of confidentiality to another client, a former client or any other person. You therefore acknowledge that any duty of confidentiality that we owe to another client, former client or any other person overrides any duty we (or anybody working for us) might have to disclose information to you which is, or might be, relevant to a matter on which we are acting for you and any duty which we (or they) might have to disclose such information to you is modified accordingly.

(c)   You agree that the fact that we hold information, whether generally or specifically, about your business and affairs will not at any time prevent us from acting for another client in relation to a matter to which that information might be relevant. This is the case even if you have "interest adverse" to that other client's. This does not, however, affect our conflict obligations to you under condition 11 below or our confidentiality obligations under conditions 9(a) and 9(b) above. Further, if we were to act for other clients in circumstances where (a) we hold confidential information in relation to you, (b) that confidential information might reasonably be expected to be material to those other clients and (c) you have (or may have) an "interest adverse" to theirs, we would, for the lifetime of the relevant matter, set up an information barrier to protect that confidential information.

(d)   You also agree (without prejudicing the generality of condition 9(c) above) that if you cease to be a client of Arthur Cox and we continue to hold confidential information in relation to you, we may act for other clients in relation to any matter where (a) that confidential information might reasonably be expected to be material and (b) you have (or may have) an "interest adverse" to theirs. This does not, however, affect our confidentiality obligations under condition 9(a) above. Further, if we were to act for other clients in these circumstances, we would, for the lifetime of the relevant matter, set up an information barrier to protect any of your confidential information in our possession which might reasonably be expected to be material.

10.   **Publicity**

Unless you have directed us otherwise, we may disclose to others that you are a client. In addition, once a matter has been announced or comes into the public domain, we may disclose that we acted for you in relation to that matter and indicate the general nature or category of the work we have done. Disclosures of this kind will be made principally for the purposes of pitches, league tables and directory entries.

11.   **Data Protection**

In the course of providing legal services to you, we will receive and process information and personal data about you, your business, employees, agents or representatives. We will use such information for the purposes of providing legal services and advice and for associated administration purposes. We will also process your information where necessary to comply with our legal obligations, including those relating to anti-money-laundering. We may use your contact details to send you information, which we think may be of interest to you, such as our client update bulletins. However, at any time you can opt out of receiving such information by emailing or phoning our Marketing Department or by simply following the unsubscribe instructions on the materials you receive.

**ARTHUR COX**

12.  **Conflicts**

(a)  We will not act in relation to a matter where there is a legal conflict of interest in relation to that matter, or a related matter, or there is a significant risk that there is a conflict of this kind unless we are permitted to do so by the professional rules from time to time applicable to us and, where required by those rules, with your consent.

(b)  In auction situations where you instruct us to act for you as a potential bidder or offeror for a company (or other entity), business or assets, you agree that we may also act for other potential bidders or offerors (or their financiers) on the basis that separate Arthur Cox legal teams would be involved and that they would not communicate confidential information to each other.

(c)  Except where a partner has otherwise agreed in writing, we may act for other clients who are, or who you consider to be, your market competitors and, in that case, any duty which we (or anyone working for us) might have to disclose information to you about them or their activities will be modified in accordance with condition 9(b) above.

13.  **Limitation of Liability**

(a)  We will not be liable to you or to any third party for consequential or indirect damages or losses.

(b)  In any cases where others share responsibility for the matter, our liability for any losses or claims arising out of or in connection with the matter shall be limited to the proportion of any losses which it would be just and equitable for us to pay having regard to the extent of our responsibility.

(c)  We have an interest in the limitation of liability of our employees and accordingly, you agree not to bring any claim of any kind against any of our employees personally.

(d)  We will have no liability to you where we have not been paid for our services.

(e)  We consider financial limitations of liability in individual cases and these will be disclosed to you, where applicable.

14.  **Limitation of Liability of Other Advisers**

(a)  If you agree that another adviser's liability to you may be capped or otherwise limited, this may have adverse consequences for us. This is because, if we were to be jointly liable with those advisers to make a payment to you (or would have been jointly liable but for the agreed cap or limitation of liability), we might find ourselves liable to pay you a larger proportion of that payment than would otherwise be the case and our ability to seek a contribution from those advisers could be affected.

(b)  As a consequence, if you do agree that another adviser's liability to you may be capped or otherwise limited, any liability we might have to make a payment to you will be reduced by the full amount of the contribution we would have been able to recover from that adviser if you had not agreed that its liability to you be capped or otherwise limited. This is the case regardless of whether that other adviser actually would have been able to pay the contribution to us and means, for example, that any liability we might have to make a payment to you will be so reduced in the event of that other adviser's insolvency.

**ARTHUR COX**

15.  **E-mails**

(a)  We may correspond with you, your agents and/or representatives electronically for general communication or to convey information and documentation. We may also receive electronic communication from you, your agents and/or representatives. If you do not wish to communicate via Internet email on specific matters, please expressly request otherwise.

(b)  All our legal personnel have email addresses. Please bear in mind that we cannot guarantee the timeliness and the security of communications or that they will retain their status as privileged documents. You will understand that aspects of the Internet are outside our control.

16.  **General**

(a)  No waiver of or amendment to any term or condition of these terms of business will be effective unless it is made or confirmed in writing signed by one of our partners and you.

(b)  We hope that you will not have any cause for complaint. If, however, you do have any problem or complaint about us, please raise it in the first instance with your client partner and, if the issue cannot be resolved, with our Managing Partner.

(c)  In accordance with the professional rules from time to time applicable to us, we may stop acting for you where we have good reason including, without limitation, where you fail to pay our fees in accordance with these terms. We will, however, endeavour to notify you if we intend to do so.

(d)  We will be at liberty to destroy all files and papers, other than title deeds, six years after the conclusion of the matter to which they relate, unless you request otherwise in writing. We may also, at our discretion, either store or destroy any correspondence or documentation existing in electronic form.

(e)  These terms of business set out the rights and obligations of you and Arthur Cox only. Nothing in these terms of business shall confer or purport to confer any benefit or the right to enforce any term of these terms of business on a third party, other than condition 13(c).

(f)  Arthur Cox retains the copyright and relevant intellectual property rights of documentation prepared by Arthur Cox.

17.  **Interpretation**

(a)  These terms and conditions (as amended from time to time) apply to the particular matter in relation to which we are acting for you and to all further matters in relation to which we accept instructions to act for you. Each matter is referred to in these terms and conditions as a "matter".

(b)  A solicitor and client relationship will exist between us only if, at the relevant point in time, we have been instructed by you to act in relation to a matter, we have accepted those instructions and we are working on that matter.

(c)  References to "you" in these terms and conditions are to the person instructing Arthur Cox to act in relation to a particular matter. That person is the entity for whom our services are provided and, unless otherwise agreed in writing by one of our partners,

ARTHUR COX

no other person has any rights to enforce the terms of the relevant matter or to reply on advice given by us during the course of that matter.

(d)    References to "we" in these terms and conditions are to the partners from time to time in the partnership know as Arthur Cox whose principal place of business is in Dublin, Ireland.

(e)    Reference to an "interest adverse" in these terms and conditions are to an interest which is from time to time considered adverse, in the circumstances described in conditions 9(c) and 9(d) above, at common law. For example, an interest adverse may arise where persons are opposing parties in litigation or some other form of dispute resolution. An interest adverse may also arise where a company proposes to take over another by means of a public bid which is hostile.

18.    **Changes to these Terms of Business**

From time to time, we may find it necessary to amend these terms and conditions. We will send you a copy of the latest version of these terms and conditions on request.

19.    **Governing Law and disputes**

(a)    These terms of business will be governed by and interpreted in accordance with the laws of Ireland.

(b)    Any dispute arising out of these terms of business or our provision of legal services to you (other than a dispute in relation to payment of our fees) will be submitted in the first instance to voluntary mediation under the auspices of the Centre for Dispute Resolution, Dublin, and if mediation is not successful, then to arbitration under the provisions of the Arbitration Acts 1954 to 1998 inclusive by an Arbitrator to be mutually agreed between us. If agreement is not reached between us as to the appointment of an Arbitrator within 21 days of either party first suggesting an individual for appointment then either party can refer the issue of the appointment of an Arbitrator to the President of the Law Society who shall appoint as arbitrator a senior counsel specialising in commercial law and whose decision on such appointment shall be final and binding.

(c)    Any dispute relating to the amount or non-payment of our fees, disbursements or expenses shall be submitted to the exclusive jurisdiction of the Irish courts.